UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| UNITED STATES OF AMERICA | * | CR. NO. 02-30043-08 |
| | * | CIVIL NO. 04-1658 |
| VERSUS | * | |
| | * | JUDGE JAMES |
| TIMOTHY NATION | * | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the district court, is a motion to vacate, set aside, or reduce sentence filed by defendant Timothy Nation. (Document No.437) For reasons set out below, it is recommended that the motion be DENIED.

Defendant was named in three counts of a multi-count indictment which was handed down on November 21, 2002, charging him and several others with drug related offenses. (Rec. Doc. 1). On August 18, 2003, pursuant to a written plea agreement, the defendant pleaded guilty to a bill of information charging him with conspiracy to possess with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Rec. Docs. 249-253).

On November 13, 2003, the defendant was sentenced to 92 months imprisonment to be followed by four years of supervised release. (Rec. Doc. 289).

On June 23, 2004, the United States Court of Appeals for the Fifth Circuit dismissed the defendant's appeal after his attorney had filed an *Anders* brief. The decision was issued as mandate on July 15, 2004. (Rec. Doc. 435). This motion followed on August 5, 2004.

Collateral review is fundamentally different from and may not replace a direct appeal. *United States v. Frady*, 102 S.Ct. 1592-93 (1982); *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*), *cert. denied*, 112 S.Ct. 978 (1992). Only cognizable under 28 U.S.C. § 2255 are

jurisdictional and constitutional issues and in rare circumstances non-constitutional and non-jurisdictional errors, not raised on appeal, which could result in a "complete miscarriage of justice." *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1996).

Even if the issues are constitutional or jurisdictional, the defendant may be procedurally barred from raising them collaterally. A defendant may not raise an "issue [constitutional or jurisdictional in nature] for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994) (*citing Shaid*, 937 F.2d 228, 232 (5th Cir. 1991), *en banc, cert. denied*, 112 S.Ct. 978 (1992)); *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995).

Even if a defendant cannot establish "cause" and "prejudice," a defendant may be entitled to relief under 28 U.S.C. § 2255 if the error of a constitutional nature would result in a complete miscarriage of justice. *Shaid*, 937 F.2d at 232; *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992); *United States v. Hicks*, 945 F.2d 107, 108 (5th Cir. 1991); *United States v. Drobny*, 955 F.2d 990, 995 (5th Cir. 1992). Such a miscarriage of justice would be indicated if a constitutional violation caused the defendant to be convicted of a crime of which he is innocent. Without a "colorable showing of factual innocence," he fails to show a fundamental miscarriage of justice. *United States v. Flores*, 981 F.2d 231, 236 (5th Cir. 1993); *McCleskey v. Zant*, 111 S.Ct. 1454, 1471 (1991).

Even in a case involving a guilty plea, to establish actual innocence, a defendant must show that, "'in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Bousley v. United States*, 118 S.Ct. 1604, 1611 (1998), (*quoting Schlup v. Devo*,

115 S.Ct. 851 (1995)); *United States v. Torres,* 163 F.3d 909, 912 n. 15 (5th Cir. 1999). In this case, the defendant has failed to show cause or prejudice and has failed to point to any evidence that might conceivably establish actual innocence.

The defendant does raise an ineffective assistance of counsel claim which can be considered under 28 U.S.C. § 2255. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996); *United States v. Navejar*, 963 F.2d 733, 735 (5th Cir. 1992). However, not all ineffective assistance of counsel claims are cognizable for the first time on collateral attack absent proof of "manifest injustice." Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or deprives the defendant of some other constitutional right. *Strickland v. Washington*, 104 S.Ct. 2052, 2064 (1984).

Under *Strickland*, in order to prevail on a claim of ineffectiveness of counsel, a defendant must show the following: (1) his counsel's actions fell below an objective standard of reasonableness; and (2) the ineffective assistance of counsel prejudiced him. *Bryant v. Scott*, 28 F.3d 1411, 1414 (5th Cir. 1994).

In applying the first part of the *Strickland* test, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *Strickland,* 104 S.Ct. at 2065. The defendant must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Id.* at 2065-2066.

To establish prejudice, the second prong, the defendant must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *United States v. Saenz-Forero*, 27 F.3d 1016, 1019 (5th Cir. 1994); *Carter v. Johnson*, 110 F.3d 1098, 1110 (5th Cir. 1997). Unreliability and unfairness does not "result if the ineffectiveness of counsel does

not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 113 S.Ct. 838, 844 (1993); *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995). To establish prejudice the defendant must show that he would have received less jail time. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. May 21, 2004).

If the defendant does not make a sufficient showing as to one section of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). Furthermore, the parts of the test need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n. 6 (5th Cir. 1998).

In the context of a guilty plea, prejudice is present if there is a reasonable probability, that absent counsel's errors, the defendant would not have entered a guilty plea and would have insisted on a trial. *Hill v. Lockhart*, 106 S.Ct. 366 (1985); *Theriot v. Whitley*, 18 F.3d 311, 313 (5th Cir. 1994). Since the defendant pleaded guilty, all non-jurisdictional defects in the proceedings against the defendant are waived. This waiver includes all claims of ineffective assistance of counsel except insofar as the alleged ineffectiveness relates to the voluntariness of the guilty plea. *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000); *United States v. Smallwood*, 920 F.2d 1231, 1240 (5th Cir. 1991).

Regardless of his attorney's performance, "the conviction should be upheld if the plea was voluntary," for if the plea is voluntary, there is no prejudice. *Deville v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994). The defendant has not established that any alleged ineffective assistance of counsel resulted in an involuntary guilty plea. On the contrary, a review of the transcript of the guilty plea demonstrates that the guilty plea was voluntary.

The defendant first claims that his attorney was ineffective for informing him that he would receive a sentence of only five years if he pleaded guilty. However, this claim is contrary to his own statements made under oath and to the documents he previously signed.

At the time of the guilty plea the government described the nature of the plea agreement and stated that the government would dismiss the remaining counts as to the defendant. The Court then asked the defendant, "Mr. Nation, is that your understanding of the substance of the plea agreement you've entered into with the U.S. Attorney." The defendant answered, "Yes, sir." (Guilty Plea Transcript, p. 14). The Court asked, "Mr. Nation, has anyone made any promises other than those contained in the plea agreement that induced you to plead guilty." The defendant responded, "No, sir." (Guilty Plea Transcript, p. 15).

The Court inquired of the defendant as to whether he and his attorney had talked about the sentencing guidelines. The defendant responded in the affirmative. The Court asked the defendant, "Now, has anyone made any prediction, prophecy or promise to you as to what your sentence will be." The defendant responded, "No, sir." (Guilty Plea Transcript, p. 16).

The plea agreement signed by the defendant provided, "This is the entire plea agreement between the United States Attorney's Office and the Defendant and is entered into freely, knowingly and voluntarily with no threats or coercion after due consultation with counsel." The form that the defendant signed entitled "Understanding of Maximum Penalty and Constitutional Rights" had a clause that provided, "Aside from the language in the plea agreement, I further declare that my plea in this matter is free and voluntary and that it has been made without any threats or inducements whatsoever from anyone associated with this State or United States government or my attorney and

that the only reason that I am pleading guilty is that I am, in fact, guilty as charged." (Rec. Doc. 253).

Sworn statements in "open court during a plea hearing 'carry a strong presumption of verity.'" *United States v. Martinez-Molina*, 64 F.3d 719, 733 (5th Cir. 1995) *(citing Blackledge v. Allison*, 97 S.Ct. 1621, 1629 (1977)); *United States v. Wilkes*, 20 F.3d 651 (5th Cir. 1994). The defendant has not presented any evidence to refute his prior statements or to overcome the strong presumption of their truthfulness.

Any documents signed by the defendant at the time of the guilty plea are also entitled to "great evidentiary weight." *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994). The defendant has offered absolutely no affidavits or proof from any third party refuting his own prior sworn representations. The record clearly shows that the defendant's plea was voluntary, and that there is no basis to sustain a claim of ineffectiveness of counsel resulting in an involuntary plea.

The defendant also claims that his attorney was ineffective at sentencing, for failing to object to an additional eleven grams of crack cocaine for which he was held responsible which were not described at the guilty plea but which were noted in the presentence investigation report.

At the guilty plea the agent testifying as to the factual basis stated that the defendant was involved in two transactions totaling 6.57 grams of crack. (Guilty Plea Transcript, p. 19). The presentence investigation report listed an additional transaction entailing 10.88 grams of cocaine base. (PSI, para. 9). However, the defendant had been advised at the guilty plea that the amount described at the plea was not necessarily the amount on which his sentence would be based. The government stressed that the agent was not in the position to determine the exact relevant conduct. (Guilty Plea Transcript, p. 20). The Court indicated that it was not predetermining relevant conduct.

(Guilty Plea Transcript, p. 20). The plea agreement, which was signed by the defendant, provides that the defendant understood that a final determination of the applicable Guideline range could not be made until the presentence investigation was completed. (Rec. Doc. 252).

More importantly, even if the third transaction were omitted, the offense level would have been the same because an offense level of 26 applies to an offense entailing at least five grams but less than twenty grams of cocaine base. (PSI, para. 18). The presentence report showed that the criminal offense level was 24. The Criminal History Category was V. The guidelines imprisonment range was from 92 to 115 months. The defendant was sentenced to the bottom of the range. Objecting would not have made any difference in the defendant's sentence.

The attorney cannot be ineffective for failing to raise a futile or meritless point. *Sones v. Hargett*, 61 F.3d 410, 415 n. 5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."); *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("[C]ounsel is not required to make futile motions or objections."); *Murray v. Maggio*, 736 F.2d at 283 ("Counsel is not required to engage in the filing of futile motions.") Therefore, the Defendant's motion on this basis should also be DENIED.

The defendant also cites the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000), but is basically seeking relief under *United States v. Booker*, — U.S. —, 125 S.Ct. 738, — L.Ed.2d — (Jan. 12, 2005). In *Booker*, the United States Supreme Court held that the Sixth Amendment right to trial by jury is violated under a mandatory guidelines system if a sentence is increased because of an enhancement based on facts found by the judge that were

neither admitted by the defendant nor found by the jury. The Supreme Court decided that the remedy was to render the guidelines advisory rather than mandatory.

The *Booker* decision cannot be applied retroactively to cases on collateral review. In discussing the consequences of its decision, the *Booker* Court stated that the decision will apply to all cases on direct review. *Booker*, 125 S.Ct. at 769. The United States Court of Appeals for the Fifth Circuit has held that *Booker* is not applicable retroactively to cases on collateral review for purposes of a successive motion under § 2255. *In re Elwood*, 408 F.3d 211 (5th Cir. 2005). Although *Elwood* dealt with the specific issue of a successive § 2255, the analysis of retroactivity is applicable to the case at bar. Furthermore, other circuits have specifically held that *Booker* is not applicable retroactively to initial § 2255 petitions. *Humphress v. United States*, 398 F.3d 855 (6th Cir. Feb. 25, 2005); *Varela v. United States*, 400 F.3d 864, 868 (11th Cir. Feb. 17, 2005); *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. Feb. 2, 2005); *Guzman v. United States*, 404 F.3d 139 (2nd Cir. 2005); *Lloyd v. United States*, 407 F.3d 608 (3rd Cir. May 17, 2005); *United States v. Bellamy*, — F.3d —, 2005 WL 106176 (10th Cir. June 16, 2005).

The correctness of the above-cited jurisprudence, which holds that *Booker* is not applicable retroactively to cases on collateral review, is evident if the Supreme Court precedent, which was analyzed carefully in some of the above-cited jurisprudence, is examined. *Booker*'s Sixth Amendment holding constitutes a "new constitutional rule of criminal procedure," which under *Teague v. Lane*, 109 S.Ct. 1060 (1989), is not retroactively applicable to cases that became final before the decision was announced. The argument that *Booker* is a new procedural rule that is not retroactive to cases on collateral review is supported by the Supreme Court's decision in *Schriro v. Summerlin*, 124 S.Ct. 2519 (2004).

In *Summerlin*, the Court considered whether *Ring v. Arizona*, 122 S.Ct. 2428 (2002), applies retroactively to cases that had already become final when *Ring* was decided. *Ring* held that because Arizona law authorized the death penalty only if an aggravating factor was present, *Apprendi* required the existence of such a factor to be proved to a jury rather than to a judge. Summerlin's conviction and death sentence, which was imposed under the same Arizona law that was at issue in *Ring*, became final long before *Ring* was decided. The Supreme Court held that "*Ring* announced a new procedural rule that does not apply retroactively to cases already final on direct review." *Summerlin*, 124 S.Ct. at 2526. *Ring* was not a new substantive rule which altered "the range of conduct or class of persons that the law punishes." *Summerlin*, 124 S.Ct. at 2523. Rather, *Ring* altered the "permissible methods for determining whether a defendant's conduct is punishable." That type of rule is a "prototypical procedural rule." *Summerlin*, 124 S.Ct. at 2523.

The rule in *Booker*, thus, is also a "prototypical procedural rule." As stated in *McReynolds*, 397 F.3d at 481, "No conduct that was forbidden before *Booker* is permitted today; no maximum available sentence has been reduced." In *Thomas v. Jeter*, 2005 WL 415896 at * 2, the court stated that the *Booker* "rule appears to merely 'allocate decision making authority' with respect to sentencing rather than stating a new substantive rule that may upset a judgment of conviction on collateral review."

In *Summerlin*, the Court also held that *Ring* did not fall within *Teague*'s narrow exception for "watershed rules" of criminal procedure. The choice between judges and juries as fact finders does not make a fundamental difference, since there is no indication that one choice is more accurate than the other. *Summerlin*, 124 S.Ct. at 2525. In stressing that *Booker* did not establish a watershed

9

rule, the Seventh Circuit at *McReynolds*, 397 F.3d at 481, discussed the remedial portion of *Booker* as follows:

> The remedial portion of *Booker* held that decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the Sixth Amendment so long as the guideline system has some flexibility in application. As a practical matter, then, petitioners' sentences would be determined in the same way if they were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system. That is not a "watershed" change that fundamentally improves the accuracy of the criminal process.

Thus, as held in the decisions cited above, the Supreme Court decision of *Summerlin* demonstrates that *Booker* cannot be applied retroactively to cases on collateral review. The defendant's claim that his sentencing violated the Sixth Amendment, thus, cannot be presently considered.

## CONCLUSION

For the foregoing reasons, the undersigned recommends that the defendant's motion be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE**

**SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 29th day of September, 2005.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE